UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| ARTIE MCLAURIN § | |
| § | |
| v § | |
| § | CIVIL ACTION NO._____ |
| SOUTHERN METHODIST § | |
| UNIVERSITY, § | |

**PLAINTIFF'S ORIGINAL COMPLAINT AND JURY DEMAND**

**TO THE HONORABLE JUDGE OF SAID COURT:**

**NOW COMES** Artie McLaurin, hereinafter called Plaintiff, complaining of and about Southern Methodist University, hereinafter called Defendant, and for cause of action shows unto the Court the following:

**PARTIES AND SERVICE**

1.      Plaintiff Artie McLaurin, is a citizen of the United States and the State of Texas and resides in Denton County, Texas.

2.      Defendant Southern Methodist University ("SMU") is a non-profit corporation organized and existing under the law of the State of Texas, with it principal place of business at 6423 Boaz Lane, Dallas, Texas 75205, and operates as an educational institutional in Dallas, Texas, where the discriminatory activity occurred.  Defendant SMU may be served by serving Paul J. Ward, its Registered Agent authorized to accept service at the Perkins Administration Building at 6425 Boaz, Dallas, Texas 75275.

**JURISDICTION AND VENUE**

3.      The action arises under Title VII of the Civil Rights Act of 1964 as

hereinafter more fully appears. Pursuant to 28 U.S.C. § 1331, this Court has original jurisdiction over the subject matter of this action.

4. This Court has supplemental jurisdiction over state law claims discussed below under 28 U.S.C. Section 1367(a) because they arise out of the same case or controversy.

5. Venue in this Court is proper pursuant to 28 U.S.C. § 1391(b) and (c) because the Defendant's principal place of business is in this judicial district and because a substantial part of the events or omissions giving rise to the asserted claimed occurred in this judicial district. Further, the exercise of personal jurisdiction comports with Due Process under the United States Constitution.

## NATURE OF ACTION

6. This is an action under Title 42 U.S.C. Section 2000e et. seq. as amended by the Civil Rights Act of 1991 to correct unlawful employment practices on the basis of sex.

## CONDITIONS PRECEDENT AND
## EXHAUSTION OF ADMINISTRATIVE REMEDIES

7. All conditions precedent to jurisdiction have occurred or been complied with: a charge of discrimination was filed with the Equal Employment Opportunity Commission within three-hundred days of the acts complained of herein and Plaintiff's Complaint is filed within ninety days of Plaintiff's receipt of the Equal Employment Opportunity Commission's issuance of a right to sue letter.

**FACTUAL ALLEGATIONS**

8. Plaintiff Artie McLaurin applied for the Assistant of Director of Academic Affairs at Southern Methodist University. During the interview, Plaintiff was asked questions about her marital status and other questions about whether there would be any interference with her ability to do the job.

9. On January 14, 2015, Dr. Shannin Lewis called Plaintiff and verbally offered the job for employment for position of Assistant Director of Academic Affairs with the Stem Prep Program at Southern Methodist University. During this conversation, Plaintiff was given the start date of February 1, 2015.

10. During this conversation with Dr. Shannin Lewis, Plaintiff expressed her concern with the salary. The offer of pay was for $50,000/year. Plaintiff sought an increase in salary. Dr. Shannin Lewis said that she would take Plaintiff's concerns to Executive Director, Dr. Moses Williams.

11. On January 20, 2015, Dr. Shannin Lewis called Plaintiff and informed her that Dr. Williams agreed with Plaintiff's salary concerns and changed her salary from $50,000/year to $60,000/year.

12. On January 22, 2015, Dr. Shannin Lewis called Plaintiff and formally offered her the position of Assistant Director of Academic Affairs with the Stem Prep Program at Southern Methodist University. Plaintiff once again confirmed the February 1, 2015 start date and then verbally accepted the offer of employment. Dr. Shannin Lewis then told Plaintiff that the S.M.U. Human Resources Department would send her a written offer via mail.

13. After having not received the written offer from the Human Resources Department only a few days prior to her scheduled start date, Plaintiff became concerned. After calling several different individuals at Southern Methodist University, Plaintiff was made aware that her start date was changed from February 1, 2015 to March 1, 2015. No employee of Southern Methodist University contacted Plaintiff to inform her that her start date had been changed.

14. Eventually Plaintiff was able to get into contact with Executive Director Dr. Moses Williams. She told Dr. Williams that she had confirmed multiple times that her start date was February 1, 2015. Plaintiff also informed Dr. Williams of her expectation to be paid for the month of February. Additionally, Plaintiff told Dr. Williams that she turned down other job offers and freelance work in order to prepare for her February 1, 2015 start date.

15. Plaintiff attended a mandatory orientation on February 16, 2015. After the orientation, Plaintiff began her duties per her role as Assistant Director of Academic Affairs.

16. On February 26, 2015, Plaintiff received her first paycheck. Plaintiff realized that she was only paid half of her salary for February and that she was only paid from February 16, 2015 and not from February 1, 2015. When Plaintiff contacted the Human Resources Department they informed her that in order to change her salary and start date she must have a written request signed by Executive Director Dr. Moses Williams.

17. Dr. Moses Williams denied Plaintiff's request to change her start date to

February 1, 2015 in the system, despite having confirmed that date several times and not being informed about any changes. Because Plaintiff expected to be paid for the entire month of February she informed her supervisor that she could no longer afford to attend the training seminar in San Diego in March.

18.     On March 4, 2015, Plaintiff met with Rebecca Sampson ("Rebecca"), Human Resource Specialist for Employee Relations.  Plaintiff explained to Rebecca the issues that occurred with her paycheck.  Otherwise, Plaintiff stated that she was happy working with her team and very much enjoyed her job, new co-workers, and supervisor. Rebecca asked Plaintiff "why would you want to continue working with the team if you are having communication problems this early on?" Plaintiff reiterated her happiness with the team to Rebecca.

19.     Rebecca told Plaintiff that Dr. Williams told her that Plaintiff's reason for not going on the trip to San Diego, CA was in retaliation for not being paid for the full month of February 2015. This statement made Plaintiff sad considering that Dr. Williams never took the time to discuss the situation regarding the trip with her. Rebecca urged Plaintiff to think about whether she wanted to work for this department. Rebecca went further to tell Plaintiff of "red flags" to look for when considering a job. Plaintiff soon discovered that Dr. Williams was aware that she has a young child, but she never made this information known to anyone at work.

On March 17, 2015, Rebecca left a voicemail for Plaintiff on her personal cell phone that her job was in jeopardy and that Dr. Moses Williams was "looking" at termination.

20.     Rebecca gave Plaintiff four reasons as to why Dr. Moses Williams was looking at termination. The alleged reasons for termination are: (1) Plaintiff requested her start date be changed in the system; (2) Plaintiff requested a higher salary than what was offered; (3) Plaintiff asked to be paid for the entire month of February; and (4) Plaintiff did not attend the training seminar in San Diego.

21.     On March 18, 2015, Plaintiff was terminated from her position at Southern Methodist University. Dr. Moses Williams confirmed that Plaintiff was fired because she asked to be paid before her contract started (for the entire month of February) and because Plaintiff did not attend the training seminar in San Diego. Plaintiff had explained that she could not afford the childcare for her son for the time she would be in San Diego due to being paid half of her salary in February.

22.     Plaintiff never informed Dr. Moses Williams that she had a young son, but he knew that information during the interview.

23.     Plaintiff's factual allegations are substantiated by an audio recording and a voicemail, as well as, other correspondence.

24.     As a direct and proximate result of the hostile work environment that Plaintiff experienced due to asking for a higher salary, and salary for the period she was scheduled to initially start, and for being unable to attend a training seminar in San Diego, Plaintiff suffered great embarrassment, humiliation, and mental and physical anguish.

**SEX DISCRIMINATION**

25.     Plaintiff incorporates as if fully restated all of the allegations previously

6

written.

26. Defendant, Southern Methodist University, engaged in unlawful employment practices involving Plaintiff because she is a female and a mother.

27. The unlawful employment practices of Defendant, Southern Methodist University, specifically punishing Plaintiff by terminating her because she could not attend a training seminar in San Diego due to Defendant failing to pay her for the entire month of February and could no longer afford childcare for her son, had a disparate and adverse impact on Plaintiff because Plaintiff is a female and a mother. Such employment practices were not job-related and were not consistent with business necessity.

28. Defendant, Southern Methodist University, discriminated against Plaintiff in connection with the compensation, terms, conditions and privileges of employment or limited, segregated or classified Plaintiff in a manner that would deprive or tend to deprive her of any employment opportunity or adversely affect her status because of Plaintiff's sex in violation of 42 U.S.C. Section 2000e-(2)(a).

29. Defendant, Southern Methodist University, classified Plaintiff in a manner that deprived her of an equal employment opportunity that was provided to employees similarly situated in violation of 42 U.S.C. Section 2000e-(2)(a).

**RETALIATION BY SOUTHERN METHODIST UNIVERSITY**

30. Plaintiff incorporates as if fully restated all of the allegations previously written.

31. Plaintiff alleges that Defendant Southern Methodist University instituted a

campaign of retaliation, which included terminating Plaintiff only a month after she began her position at Southern Methodist University after she asked for an increased salary, to be paid for the month of February, a start date that was confirmed on several occasions, and for being unable to attend a training seminar in San Diego. This retaliation was and is due to Plaintiff exercising her rights by opposing a discriminatory practice. Plaintiff suffered damages for which Plaintiff herein sues.

## WRONGFUL TERMINATION

32. Plaintiff incorporates as if fully restated all of the allegations previously written.

33. Plaintiff alleges that Defendant Southern Methodist University wrongfully terminated Plaintiff, pursuant to Tex. Lab. Code § 21.051 by terminating Plaintiff only a month after she began her position at Southern Methodist University after she asked for an increased salary, to be paid for the month of February, a start date that was confirmed on several occasions, and for being unable to attend a training seminar in San Diego. This wrongful termination was and is due to Plaintiff exercising her rights by opposing a discriminatory practice, as well as, being discriminated against because of her sex. Plaintiff suffered damages for which Plaintiff herein sues.

## DAMAGES

34. Plaintiff sustained the following damages as a result of the actions and/or omissions of Defendant described hereinabove:

    a. All reasonable and necessary Attorney's fees incurred by or on behalf of Plaintiff;

    b.    Back pay from the date that Plaintiff was denied equal pay for equal work and interest on the back pay in an amount to compensate Plaintiff as the Court deems equitable and just;

    c.    All reasonable and necessary costs incurred in pursuit of this suit;

    d.    Prejudgment interest;

    e.    Loss of earnings in the past;

    f.    Loss of earning capacity which will, in all probability, be incurred in the future; and

    g.    Loss of benefits.

## SPECIFIC RELIEF

35.    Plaintiff seeks the following specific relief which arises out of the actions and/or omissions of Defendant described hereinabove:

    a.    Reinstate Plaintiff to the position and pay grade which Plaintiff held but for the unlawful employment actions of Defendant.

## PRAYER

**WHEREFORE, PREMISES CONSIDERED**, Plaintiff, Artie McLaurin, respectfully prays that the Defendant be cited to appear and answer herein, and that upon a final hearing of the cause, judgment be entered for the Plaintiff against Defendant for damages in an amount within the jurisdictional limits of the Court; together with interest as allowed by law; costs of court; and such other and further relief to which the Plaintiff may be entitled at law or in equity.

Respectfully submitted,

By: /s/ Lantis G. Roberts
Lantis G. Roberts
Texas Bar No. 24057463
E-Mail: Lantis@kreativelaw.com
1502 Houston Street, Suite 108
Grand Prairie, Texas 75050
Tel. (817) 768-1819
Fax. (817) 704-4529
**Attorney for Plaintiff**
**Artie McLaurin**

**PLAINTIFF HEREBY DEMANDS TRIAL BY JURY**